Callahan, J.
The petitioners, who are landlords of three adjoining buildings operated as a single unit and known as 530 Broadway, New York City, applied to the Supreme Court for an order requiring the tenants occupying commercial space in said premises to show cause why the emergency rents being paid by said tenants should not be increased. There are four stores in the premises. Two of the stores were used for retail business. These tenants were not made parties for the reason that the proceeding was commenced before the adoption of chapter 314 of the Laws of 1945, extending the emergency rent laws to retail stores. The two remaining store tenants were conducting enterprises therein which came within the Commercial Rent Law. They were made parties, but one of them has settled his dispute with the landlords.
Special Term computed the gross emergency rents of the premises at $64,726.60, fixing the same at 15% above the gross rentals as of March, 1943. It found that the reasonable allowable income should be $68,398.09 and directed a payment of increased rents by each of the tenants who were parties.
In determining the proceeding the trial court made specific findings concerning the reasonable value of the property, the cost of maintenance and operation thereof, and the amount of unpaid mortgage. It added the reasonable expense for maintenance and operation to .an allowance which it made of 6% of the value found and 2% of the unpaid mortgage, and thus computed the figure of $68,398.09 above mentioned.
*5 Both the landlords and the contesting tenants appeal, advancing numerous assignments of error. Both sides complain of the valuation arrived at. The landlords contend that the expenses for operation and maintenance as determined by the court are insufficient. The tenants contend that the allowance of 2% amortization was improper. Some of the tenants further contend that, the increased rents plus the rent from the three stores, the tenants of which are not parties, would exceed the allowable income fixed by the court. Some further contend that the increases allowed were improperly apportioned as between tenants. We will discuss these various claims of error in the order mentioned.
The trial court fixed the fair value of the premises at $400,000. Although the findings declare this sum to be the value of the buildings, it seems clear that the court intended to include land and buildings in such valuation. The assessed valuation for the year 1944-45 for tax purposes was $515,000. Certiorari proceedings were pending in which the petitioners were seeking to reduce that assessment. Petitioners purchased the properties herein on April 1, 1944, for $345,000. The assessed valuation for the year 1943-44 was $535,000, but this figure had been reduced by the Supreme Court in certiorari proceedings to $392,000. The assessed valuation for 1942-43 had also been reduced to $402,000 in certiorari proceedings.
Considering all of the circumstances, and giving due weight to testimony of the expert witnesses called by both sides, we are of the opinion that the valuation fixed by the trial court of $400,000 was warranted by the evidence.
Numerous items of the expense of maintenance and operation as fixed by the court are complained of by the landlords. They, as petitioners, introduced evidence of the alleged actual costs of operation during a year after they acquired the premises, and for several years prior thereto when it was in other ownership. The trial court disallowed some items of expense which had actually been incurred, and reduced others. Three items of expense which were eliminated by the court seem proper items, but the aggregate amount thereof is so small that we will not discuss them in detail as their omission did not substantially change the result arrived at.
The trial court sharply reduced amounts claimed as expenses for repairs, plumbing, painting, elecator repairs, decorating and supplies. It allowed a single sum of $2,500 to cover all these items as against petitioners’ claimed disbursements of $10,471.64 therefore. The tenants’ expert witness estimated $4,200 would be required to cover these items.
*6 The Commercial Rent Law provides (see L. 1945, ch. 3, § 4 as amd. by L. 1945, ch. 315): “ * * * In the determination of the amount of such reasonable rent: (a) due consideration shall be given to the cost of maintenance and operation of the entire property (including land and building in which such commercial space is located) including amounts paid for taxes assessed against such property, and to the kind, quality and quantity of' services furnished, but excluding amortization or interest paid or accrued on any incumbrances thereon * *
Subdivision (k) of section 2 of the same- statute defines “ Services ” to mean: “ ‘ Services.’ Repairs, decorating and maintenance, the furnishing of light, heat, steam, hot and cold water, telephone, elevator service, cleaning service, linen service, janitor service, the removal of refuse and any other facility or privilege connected with and furnished by the landlord for the use or occupancy of the commercial space.”
It will thus be seen that the statute requires that due consideration be given to the cost of maintenance as well as that of operation in fixing a reasonable rent. Here, however, several of the repair items claimed were expenses of‘an extraordinary nature which would not ordinarily recur annually. The probable life of improvements having some degree of permanency should be considered in fixing the amount to be charged as expenses for such items for a particular year.
Of course, actual experience should be given great weight in fixing the probable cost of maintenance and operation, but we do not construe the statute to require the court to accept the precise sums spent in a particular year as the cost of the same items during the years of the emergency for which the rent is being fixed. Ror example, in the present case the court might well have allowed but a fraction of the sum claimed for such items as a new roof, change of heating equipment and various elevator alterations. Accordingly, we hold that while a substantial reduction of petitioners’ claim for repairs, etc., was warranted on the proof, a figure at least as high as that estimated by the tenants’ Avitness ($4,200 yearly) would have been more in keeping with the evidence as the probable cost of repairs.
An item which the petitioners-landlords claim should have been included in the cost of operation, but which the trial court omitted, was one for depreciation of the building. We find that the trial court was correct in omitting this item. An allowance for depreciation would not be a true item of the cost of maintenance or operation of a building. Reading the present statute as a whole, we hold it was the legislative intent to confine the *7 cost of maintenance and operation in proceedings of the present nature to sums actually paid out or incurred.
Under earlier “ rent ” laws (see L. 1920, chs. 136, 944, and subsequent amendments), depreciation was permitted to be taken into consideration in fixing reasonable rents. (See Hall Realty Co. v. Moos, 200 App. Div. 66; Nod-Away Co., Inc., v. Woehr, 209 App. Div. 907.) But the scheme of the earlier statute differed substantially from that followed in the present laws. Under the earlier rent laws, unjust, unreasonable and oppressive rents were prohibited and the courts were authorized to fix a fair rent. No emergency rent v?as fixed by statute. Under the present emergency laws, rents are to be maintained at the rate paid on March 1, 1943, plus 15%. In order to fix a higher rent an application to increase must he submitted to the Supreme Court or an arbitrator. While the item of depreciation may be considered by the court or arbitrator upon an application to increase rents in determining what is a fair return, this does not mean that the court or arbitrator must include any sum for depreciation as an item of cost of maintenance or operation of the premises. It would seem rather that the Legislature had taken depreciation into consideration in the presumptively fair return of 6% and 2%.
Petitioners complain that the trial court, in fixing the item of taxes as an expense allowed less than the actual taxes. In doing so the court took into consideration the results obtained in the certiorari proceedings relating to earlier years, and that like proceedings were pending for the year 1944-45. We "consider it was within the province of the trial court to give consideration to these facts in determining'the proper amount to allow for taxes.
Another expense item complained of was.the sum allowed for cost of insurance. The buildings were insured against fire for $500,000, although petitioners’ expert computed the structural value or cost of reproduction as of 1941 at $345,000. The total of premiums paid amounted to $1,139.82. The trial court reduced this sum to $1,000. Petitioners claim that the owners and not the' tenants should have the right to fix the commensurate amount of fire insurance to be carried, and that the owners might take into consideration the present rise in cost of building in insuring their property. With this contention we agree as a general statement of the principle that should govern proceedings of the present nature, as long, at least, as the amounts expended are not unreasonable, arbitrary or capricious.
*8 This' brings us to a consideration. of the item complained - of by the tenants, namely, the item of 2% amortization of the outstanding mortgage. In the present case the owners were actually paying only 1% amortization. The tenants, contend that for this reason the court should have allowed only 1%.
We think that the parties misapprehend the effect of the provisions of the statute with-respect to the.figures of 6% return and 2% amortization. The law says that upon application to increase rents the court or arbitrator shall determine the reasonable rent based on the fair rental value of the tenant’s space.
A net annual return of 6% on the fair value of the entire prop: erty, including the land, plus 2% of principal for amortization of any mortgages thereon, is presumed to be a reasonable return. However, the statute fixes as the measure of allowable rent in all cases a sum that would produce a reasonable “return to the owner. The statute does not make the 6% or the 2% a precise measure of the return nor does it make said percentages the maximum or minimum return. They are figures as to which a statutory presumption of fair return is created. The statute does not require that the actual payment of less amortization than 2%, or perchance payment of a greater amount of amortization, shall control the issue as to what is to be allowed as a reasonable return.
It is clear that the statute did not intend to provide that a property incumbered by mortgages was to be allowed a greater amount as a reasonable return than one free and clear of mortgage indebtedness. If it did, its constitutionality might br rendered questionable. It provides that the question to be decided upon each application for increased rents, is what is a reasonable rent based on fair rental value. The presumptive figures of 6% and 2% are merely aids in determining what return is prima facie reasonable.
In Matter of Frankel (Hatters’ Oakhide Boxes) (269 App. Div. 531, 533), we said: “ While the court is to. determine what constitutes a reasonable rent for the commercial space, the amount is to be arrived at by a mathematical computation in accordance with a formula set forth in the law. ’ ’
In that case the only proof introduced was on the part of the landlord. We held, in effect, that the formula set forth in the statute as indicating the presumptively fair return should be followed in the absence of other proof.
Some of the tenants complain that in fixing the amount of increased rent for the various lofts the court did not take into consideration the comparative value of same. The statute says *9 (§ 4): “ * * * (b) such rent shall be fixed in such a manner that it shall not exceed a fair and reasonable proportion of the gross rentals from all the commercial space in the entire building, giving due consideration to the amount and character of the commercial space used or occupied by such tenant, provided, however, that the gross rentals from all such commercial space shall not exceed a fair and reasonable proportion of the gross rentals from the entire building. * * * ”
In a proceeding under section 4 of the Commercial Rent Law, the burden imposed by any increases granted should be apportioned as against each tenant, giving due consideration to the amount and character of the space occupied by it, and the return from the entire premises. Here the trial court fixed the reasonable rental value of all lofts in each of the three buildings alike, varying the amounts in the different buildings, but making-no distinction (except in one instance) as between the respective lofts in each building. The lofts within each building- were alike in area, but differed in size in the various buildings. The expert witness called by the tenants testified that lofts within each building were of the same rental value. This appears to be all the proof introduced on the subject. It would, therefore, seem that the court apportioned the increased rent on the basis of the evidence.
Some tenants contend that, taking into consideration the rents of the three stores the tenants of which are not parties, the amount of gross income would exceed the $68,398.09 fixed by the court as the allowable rent. As we read the record the trial court allowed $52,560 as the gross allowable income from the lofts, and $7,500 as like income from a store used for commercial purposes. This would make a total of $60,060. To this would have to be added at least an amount equal to the emergency rents for the three remaining stores, which we compute at $10,695, or a grand total of $70,755 as allowable income. Taking into consideration the increase for cost of operation to the extent which we have indicated herein, we find that $70,755 would represent the fair return from the whole premises based on reasonable rental value, and that the increases of rents as imposed by Special Term were, therefore, substantially correct.
The final order should be affirmed, with one bill of costs to the tenants-respondents-appellants, Samuel Handel and Louis Handel, individually, etc., et ah, Zell Products Corporation, and Custom Bilt Shirt Co., Inc., and Louis Rosenthal.
Martin, P. J., Townley, Q-lennon and Peck, JJ., concur.
*10 Order unanimously affirmed, with one bill of costs to the tenants-respondents-appellants, Samuel Handel and Louis Handel, individually, etc., et al., Zell Products Corporation, and Custom Bilt Shirt Co., Inc., and Louis Rosenthal. Settle order on notice with corrected findings in accordance with opinion.